## UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| BERNARD  WINKLER,  Individually  and  On Behalf of All Others Similarly Situated, ) ) ) | |
| Plaintiff, ) | Case No. _____ |
| ) | |
| v. ) | CLASS ACTION |
| ) | |
| CARBON BLACK, INC., PATRICK MORLEY, JEFFREY FAGNAN, TOM KILLALEA, RONALD H. NORDIN, VANESSA PEGUEROS, JOSEPH S. TIBBETTS, JR., JILL A. WARD, ANTHONY ZINGALE, CALISTOGA MERGER CORP., and VMWARE, INC., ) ) ) ) ) ) ) ) | JURY TRIAL DEMANDED |
| ) | |
| Defendants. ) | |

## CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE
## SECURITIES EXCHANGE ACT OF 1934

Plaintiff Bernard Winkler ("Plaintiff"), individually and on behalf of all others similarly situated, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

## NATURE OF THE ACTION

1.      Plaintiff brings this class action on behalf of the public stockholders of Carbon Black, Inc. ("Carbon Black" or the "Company") against Carbon Black's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(e) and 20(a) of the Securities Exchange Act of 1934, 15.U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14d-9, 17 C.F.R. 240.14d-9, arising out of the Board's attempt to sell the Company to VMware, Inc. through its wholly-owned subsidiary Calistoga Merger Corp. (collectively "VMware").

2.      Defendants have violated the above-referenced Sections of the Exchange Act by causing a materially incomplete and misleading Schedule 14D-9 Recommendation Statement (the "Recommendation Statement") to be filed with the United States Securities and Exchange Commission ("SEC") on September 6, 2019. The Recommendation Statement recommends that Carbon Black shareholders tender their shares in favor of a proposed transaction whereby Carbon Black is acquired by VMware (the "Proposed Transaction"). The Proposed Transaction was first disclosed on August 22, 2019, when Carbon Black and VMware announced that they had entered into a definitive merger agreement (the "Merger Agreement") pursuant to which VMware will acquire all of the outstanding shares of common stock of Carbon Black for $26.00 per share (the "Merger Consideration"). The deal is valued at approximately $2.1 billion and is expected to close by January 31, 2020.

3.      The Recommendation Statement is materially incomplete and contains misleading representations and information in violation of Sections 14(e) and 20(a) of the Exchange Act. Specifically, the Recommendation Statement contains materially incomplete and misleading information concerning the sales process, financial projections prepared by Carbon Black management, and the financial analyses conducted by Morgan Stanley & Co. LLC ("Morgan Stanley"), Carbon Black's financial advisor.

4.      For these reasons, and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction, including filing any amendment to the Recommendation Statement, unless and until the material information discussed below is included in any such amendment or otherwise disseminated to Carbon Black's shareholders. In the event the Proposed Transaction is consummated without the material omissions referenced below being remedied, Plaintiff seeks to recover damages resulting from the

Defendants' violations.

## PARTIES

5.      Plaintiff is, and has been at all relevant times, the owner of shares of common stock of Carbon Black.

6.      Defendant Carbon Black is a corporation organized and existing under the laws of the State of Delaware. The Company's principal executive offices are located at 1100 Winter Street, Waltham, MA 02451. Carbon Black common stock trades on NASDAQ under the ticker symbol "CBLK."

7.      Defendant Patrick Morley ("Morley") has been President, CEO and a director of the Company since 2007.

8.      Defendant Jeffrey Fagnan ("Fagnan") has been a director of the Company since 2004.

9.      Defendant Tom Killalea ("Killalea") has been a director of the Company since 2017.

10.      Defendant Ronald H. Nordin ("Nordin") has been a director of the Company since 2007.

11.      Defendant Vanessa Pegueros ("Pegueros") has been a director of the Company since February 2019.

12.      Defendant Joseph S. Tibbetts, Jr. ("Tibbetts") has been a director of the Company since 2015.

13.      Defendant Jill A. Ward ("Ward") has been a director of the Company since December 2018.

14.      Defendant Anthony Zingale ("Zingale") has been a director of the Company since

2015.

15.     Defendants Morley, Fagnan, Killalea, Nordin, Pegueros, Tibbets, Ward and Zingale are collectively referred to herein as the "Board."

16.     Defendant VMware, Inc. is a Delaware corporation with its principal executive offices located at 3401 Hillview Avenue, Palo Alto, CA 94304. VMware, Inc. common stock trades on NYSE under the ticker symbol "VMW."

17.     Defendant Calistoga Merger Corp. is a Delaware corporation and is a wholly-owned subsidiary of VMware, Inc.

## JURISDICTION AND VENUE

18.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(e) and 20(a) of the Exchange Act.

19.     Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

20.     Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because: (i) a significant amount of the conduct at issue took place and had an effect in this District; and (ii) Carbon Black is incorporated in this District.

## CLASS ACTION ALLEGATIONS

21.     Plaintiff brings this action on his own behalf and as a class action on behalf of all owners of Carbon Black common stock and their successors in interest and/or their transferees,

except Defendants and any person, firm, trust, corporation or other entity related to or affiliated with the Defendants (the "Class").

22.     This action is properly maintainable as a class action for the following reasons:

(a)     The Class is so numerous that joinder of all members is impracticable. As of August 20, 2019, Carbon Black had approximately 74.2 million shares outstanding.

(b)     Questions of law and fact are common to the Class, including, inter alia, the following:

(i)     Whether Defendants have violated Section 14(e) of the Exchange Act and Rule 14d-9;

(ii)    Whether the Individual Defendants have violated Section 20(a) of the Exchange Act;

(iii)   Whether Plaintiff and other members of the Class would suffer irreparable injury were Defendants to file an amendment to the Recommendation Statement with the SEC that does not contain the material information referenced above and the Proposed Transaction is consummated as presently anticipated;

(iv)    Whether Plaintiff and the other members of the Class would be irreparably harmed were the transaction complained of herein consummated; and

(v)     Whether the Class is entitled to injunctive relief or damages as a result of Individual Defendants' wrongful conduct.

(c)     Plaintiff is committed to prosecuting this action, is an adequate representative of the Class, and has retained competent counsel experienced in litigation of this nature.

(d)     Plaintiff's claims are typical of those of the other members of the Class.

(e)     Plaintiff has no interests that are adverse to the Class.

(f)     The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications for individual members of the Class and of establishing incompatible standards of conduct for the party opposing the Class.

(g)     Conflicting adjudications for individual members of the Class might as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

(h)     Plaintiff anticipates that there will be no difficulty in the management of this litigation. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

## SUBSTANTIVE ALLEGATIONS

### A.  Background of the Company and the Proposed Transaction

23.     Carbon Black provides endpoint security solutions, detecting and preventing threats, via a cloud-based platform. The Company's more than 5,000 customers range from small organizations to Fortune 100 companies. While Carbon Black began in 2002, the Company did not go public until May 2018. The past three years has seen a 95% increase in revenues for the Company, from $101.8 million in 2016 to $198.5 million in 2018. Carbon Black's customer base has increased as well, from 2,516 customers in 2016 to 5,025 in 2018.

24.     Despite Carbon Black's recent entry to the public market, on August 22, 2019, the Company entered into the Merger Agreement with VMware.

25.     According to the press release issued on July 22, 2019 announcing the Proposed

Transaction:

### VMware Enters Definitive Agreement to Acquire Carbon Black

*Combination creates highly differentiated, intrinsic security cloud that will protect workloads and clients through big data, behavioral analytics and AI*

*$26 per share cash transaction, representing an Enterprise Value of $2.1 billion*

PALO ALTO, Calif., August 22, 2019 (GLOBE NEWSWIRE) — VMware, Inc. (NYSE: VMW), a leading innovator in enterprise software, and Carbon Black (NASDAQ: CBLK), a leader in cloud-native endpoint protection, today announced that the companies have entered into a definitive agreement by which VMware will acquire Carbon Black in an all cash transaction for $26 per share, representing an enterprise value of $2.1 billion. Following the close of the transaction, VMware will be positioned to provide a highly differentiated, intrinsic security cloud that will better protect enterprise workloads and clients through big data, behavioral analytics and AI.

Carbon Black is a leading next-generation security cloud provider with more than 5,600 customers and 500 partners globally. The company's innovative cloud-native security platform leverages big data and behavioral analytics to provide comprehensive endpoint protection against even the most advanced cyberattacks. The combination of Carbon Black's solutions with VMware's security offerings, including AppDefense, Workspace ONE, NSX and SecureState, will create a modern security cloud platform for any application, running on any cloud, on any device. This combined offering will provide customers advanced threat detection and in-depth application behavior insight to stop sophisticated attacks and accelerate responses.

The distribution and enterprise reach of VMware and Dell will further accelerate the adoption of Carbon Black in the enterprise, both through direct selling and through partners, including leading managed security players, channel partners and system integrators.

"The security industry is broken and ineffective with too many fragmented solutions and no cohesive platform architecture. By bringing Carbon Black into the VMware family, we are now taking a huge step forward in security and delivering an enterprise-grade platform to administer and protect workloads, applications and networks," said Pat Gelsinger, CEO, VMware. "With this acquisition, VMware will also take a significant leadership position in security for the new age of modern applications delivered from any cloud to any device."

"Today marks an exciting milestone for Carbon Black, VMware and the entire cybersecurity industry," said Patrick Morley, CEO, Carbon Black. "We now have the opportunity to seamlessly integrate Carbon Black's cloud-native endpoint protection platform into all of VMware's control points. This type of bold move is exactly what the IT and security industries have been looking to see for a very long time. We ook forward to working with the VMware team to continue delivering a modern security cloud platform to customers around the world. Additionally, we're pleased that today's transaction provides Carbon Black's shareholders with immediate and substantial value."

### DETAILS REGARDING THE TRANSACTION

Under the terms of the transaction, which is structured as a cash tender offer, Carbon Black shareholders who validly tender (and do not properly withdraw) their shares in Carbon Black, will receive $26 per share in cash, representing an enterprise value of $2.1 billion. The transaction is expected to be funded through cash on the balance sheet, and by accessing short-term borrowing capacity. Closing of the transaction is expected in the second half of VMware's fiscal year 2020, ending January 31, 2020, and is subject to customary conditions, including, VMware's acquisition of at least a majority of the shares of Carbon Black, and the expiration or termination of the required waiting period under the Hart-Scott-Rodino Antitrust Improvements Act of 1976, as amended, among others.

**B. Carbon Black's Officers Stand to Receive Benefits Unavailable to the Class**

26.     The Recommendation Statement acknowledges that the Company's executive officers have interests in the merger that may differ from those of the stockholders and may create conflicts of interest.

27.     For the Board, their equity awards will vest and be converted into the right to receive either the Merger Consideration or another amount. For employees, vested options will be canceled and converted into the right to receive the Merger Consideration less the exercise price of the options. Unvested options and restricted stock units will roll over into VMware equity awards. The treatment of these equity awards, in addition to benefits provided to executive officers through their respective employment agreements, will create a windfall for Carbon Black's executive officers that is unavailable to the common stockholders. Additionally, Carbon Black's executive officers will be able to continue their ownership of the post-closing company as other

stockholders are cashed out. As demonstrated in the following chart, just two executive officers of Carbon Black stand to receive up to $28.6 million, if they are let go without "cause" or voluntarily leave for "good reason" after the Proposed Transaction closes:

| Name | Cash | Equity | Perquisites/ Benefits | Total |
|------|------|--------|----------------------|-------|
| Patrick Morley | $1,351,875 | $15,701,398 | $38,469 | $17,091,742 |
| Thomas Hansen | $800,000 | $10,747,121 | $23,499 | $11,570,620 |

28.     The members of the Board and the executive officers stand to gain handsomely no matter what. In total, as demonstrated in the following chart, the executive officers and Board members will obtain more than $109 million from their vested options and shareholdings:

| | Total Share Consideration | Total Vested Options Consideration | Total RSU Consideration |
|------|------|------|------|
| **Executive Officers** | | | |
| Patrick Morley | $23,403,796 | $49,547,013 | – |
| Thomas Hansen | – | $3,594,720 | – |
| Ryan Polk | $193,258 | $1,446,565 | – |
| Michael Viscuso | $2,403,544 | $11,675,041 | – |
| **Directors** | | | |
| Jeffrey Fagnan | $156,182 | – | $243,750 |
| Tom Killalea | $422,500 | $2,515,000 | $243,750 |
| Ronald H. Nordin | $1,762,748 | $2,225,603 | $243,750 |
| Vanessa Pegueros | – | – | $493,350 |
| Joseph S. Tibbetts, Jr. | $474,500 | $3,073,031 | $243,750 |
| Jill A. Ward | – | – | $574,366 |
| Anthony Zingale | $474,500 | $4,229,104 | $243,750 |

29.     At least three of Carbon Black's executive officers will continue their employment after the Proposed Transaction closes, including Defendant Morley, Thomas Hansen and Ryan Polk. Both Defendant Morley and Thomas Hansen will receive base salaries significantly higher than their salaries at Carbon Black, and Defendant Morley will receive $5 million in restricted stock units as part of his agreement with VMware. All three executive officers will also have Carbon Black equity awards roll over into VMware equity awards and will be eligible to receive

future equity awards. They will be able to share in the success of the Company post-closing while other stockholders have been cashed out.

### C. The Preclusive Deal Protection Devices

30.     As part of the Merger Agreement, Defendants agreed to certain preclusive deal protection devices that ensure that no competing offers for the Company will emerge.

31.     By way of example, Section 5.3(b) of the Merger Agreement includes a "no solicitation" provision barring the Company from soliciting or encouraging the submission of an acquisition proposal. Section 5.3(a) demands that the Company cease and terminate all solicitations, discussions or negotiations with any party concerning an acquisition proposal.

32.     Despite already locking up the Proposed Transaction by agreeing not to solicit alternative bids, the Board consented to additional provisions in the Merger Agreement that further guarantee the Company's only suitor will be VMware. For example, pursuant to Section 5.3(d) of the Merger Agreement, the Company must notify VMware of any offer, indication of interest, or request for information made by an unsolicited bidder. Thereafter, should the Board determine that the unsolicited offer is superior, Section 5.3(f)(iii) requires that the Board grant VMware four (4) business days to negotiate the terms of the Merger Agreement to render the superior proposal no longer superior. VMware is able to match the unsolicited offer because, pursuant to Sections 5.3(d) and (f)(iii) of the Merger Agreement, the Company must provide VMware with the identity of the party making the proposal and the material terms of the superior proposal, eliminating any leverage that the Company has in receiving the unsolicited offer.

33.     In other words, the Merger Agreement gives VMware access to any rival bidder's information and allows VMware a free right to top any superior offer. Accordingly, no rival bidder is likely to emerge and act as a stalking horse for Carbon Black, because the Merger Agreement

unfairly assures that any "auction" will favor VMware and allow VMware to piggy-back upon the due diligence of the foreclosed second bidder.

34.     In addition, pursuant to Section 7.6(b)(i) of the Merger Agreement, Carbon Black must pay VMware a termination fee of $70 million if the Company decides to pursue another offer, thereby essentially requiring that the alternate bidder agree to pay a naked premium for the right to provide the shareholders with a superior offer.

35.     Ultimately, these preclusive deal protection provisions restrain the Company's ability to solicit or engage in negotiations with any third party regarding a proposal to acquire all or a significant interest in the Company. The circumstances under which the Board may respond to an unsolicited written bona fide proposal for an alternative acquisition that constitutes or would reasonably be expected to constitute a superior proposal are too narrowly circumscribed to provide an effective "fiduciary out" under the circumstances. Likewise, these provisions also foreclose any likely alternate bidder from providing the needed market check of VMware's inadequate offer price.

**D.  The Materially Incomplete and Misleading Recommendation Statement**

36.     The Individual Defendants must disclose all material information regarding the Proposed Transaction to Carbon Black stockholders so that they can make a fully informed decision whether or not to tender their shares in favor of the Proposed Transaction.

37.     On September 6, 2019, Defendants filed the Recommendation Statement with the SEC. The purpose of the Recommendation Statement is, *inter alia*, to provide the Company's stockholders with all material information necessary for them to make an informed decision on whether to tender their shares in favor of the Proposed Transaction. However, significant and material facts were not provided to Plaintiff and the Class. Without such information, Carbon

Black shareholders cannot make a fully informed decision concerning whether or not to tender in favor of the Proposed Transaction.

### Materially Misleading Statements/Omissions Regarding the Management-Prepared Financial Forecasts

38.     The Recommendation Statement discloses management-prepared financial projections for the Company which are materially misleading. The Recommendation Statement indicates that in connection with the rendering of Morgan Stanley's fairness opinion, Morgan Stanley reviewed "certain financial projections prepared by the management of the Company and certain extrapolations prepared with guidance from the management of the Company . . . including the Forecasts." Accordingly, the Recommendation Statement should have, but failed to, provide certain information in the projections that Carbon Black's management provided to the Board and Morgan Stanley.

39.     Notably, Defendants failed to disclose the financial projections for fiscal years 2019 to 2029 for: (a) subscription, license and support revenue; (b) services revenue; (c) cost of subscription, license and support revenue; (d) cost of services revenue; (e) total cost of revenue; (f) sales and marketing expenses; (g) research and development expenses; (h) general and administrative expenses; and (i) taxable earnings before taxes, as utilized by Morgan Stanley in its analysis of the Company's net operating loss utilization. This omitted information is necessary for Carbon Black stockholders to make an informed decision on whether to tender in favor of the Proposed Transaction.

### Materially Incomplete and Misleading Disclosures Concerning Morgan Stanley's Financial Analyses

40.     With respect to the *Public Trading Comparables Analysis,* the Recommendation Statement fails to disclose whether Morgan Stanley performed any type of benchmarking analysis for Carbon Black in relation to the selected public companies.

41.     With respect to the *Discounted Equity Value Analysis*, the Recommendation Statement fails to disclose the projected amount of net cash and projected fully diluted share count used in the analysis. The Recommendation Statement further fails to disclose the individual inputs and assumptions utilized to derive the discount rate range of 9.0% used in the analysis.

42.     With respect to the *Discounted Cash Flow Analysis,* the Recommendation Statement fails to disclose the specific amount of "estimated unlevered free cash flows of the Company after calendar year 2029" to which the selected perpetuity growth rates were applied. The Recommendation Statement further fails to disclose the individual inputs and assumptions utilized to derive the discount rate range of 8.0% to 10.0% utilized in the analysis. In addition, the Recommendation Statement fails to disclose the range of implied terminal revenue multiples resulting from the analysis.

43.     With respect to the *Precedent Transactions Analysis*, the Recommendation Statement fails to disclose whether Morgan Stanley performed any type of benchmarking analysis for Carbon Black in relation to the target companies of the selected transaction.

### *Materially Incomplete and Misleading Disclosures Concerning the Flawed Process*

44.     The Recommendation Statement also fails to disclose material information concerning the sales process. For example, the Recommendation Statement fails to state whether the confidentiality agreements Carbon Black entered into with Party A, Party B and Party C are still in effect and/or contain "don't ask, don't waive" provisions that are presently precluding these parties from making a topping bid for the Company. The disclosure of the terms of any standstill provisions is crucial to Carbon Black stockholders being fully informed of whether their fiduciaries have put in place restrictive devices to foreclose a topping bid for the Company. In addition, Section 5.3(a) of the Merger Agreement prohibits the Board from waiving or releasing any

previously executed standstill agreement. Whether the Board agreed to that provision knowing that agreements with Party A, Party B and Party C contained such a standstill agreement, must be disclosed to Carbon Black stockholders before they decide whether or not to tender in favor of the Proposed Transaction.

45.     The Recommendation Statement notes that Defendant Morley contacted VMware on December 24, 2017 to inquire into VMware's interest in acquiring the Company. Then, after a series of conversations over the next month, Carbon Black indicated to VMware that it was not interested in a transaction. The Recommendation Statement fails to disclose the basis for Carbon Black ending discussions with VMware after instigating discussions concerning a strategic transaction.

46.     In July 2019, the Board discussed VMware's interest in acquiring the Company and decided to reach out to three private equity investment firms that had expressed an interest in following the Company in the security space. The Recommendation Statement does not disclose when the Company had previously connected with the private equity investment firms, and whether the Board understood their interest in "following" Carbon Black to be an interest in a potential transaction.

47.     On August 4, 2019, the Special Committee formed to consider and negotiate any strategic transaction met with Morgan Stanley and others. At that meeting, the Special Committee discussed the financial aspects of VMware's proposal of August 3, 2019 with the assistance of Morgan Stanley. The Recommendation Statement does not disclose if Morgan Stanley presented any financial analyses at that meeting and, if so, does not disclose those financial analyses.

48.     The Recommendation Statement does note that Morgan Stanley presented financial analyses to the Board and the Special Committee, but those financial analyses have not been

disclosed. This includes the preliminary review of the financial aspects of VMware's August 3, 2019 proposal as presented at the August 5, 2019 Special Committee meeting, as well as the matters relating to the price per share offered by VMware compared to certain precedent transactions based upon certain valuation metrics, matters relating to the premium offered by VMware compared with premiums paid in other software transactions during the past five years, and preliminary financial analyses with respect to the Company based on managements projections, as discussed with the Board and the Special Committee on August 21, 2019.

49.     Morgan Stanley received a fee of $3 million upon delivery of its fairness opinion, and stands to receive $31 million more upon closing of the Proposed Transaction. The Recommendation Statement does not disclose whether the Board agreed to the financial terms of Morgan Stanley's engagement before reviewing disclosures concerning potential conflicts of interest. Given the $32 million that Morgan Stanley has received from VMware and its parent company, Dell Group, over the past two years just for financing services, it is critical that Carbon Black stockholders know whether the Board considered a potential conflict on Morgan Stanley's part. The Recommendation Statement also fails to disclose whether Morgan Stanley received fees from VMware or Dell Group for services other than financing services.

50.     This information is necessary to provide Company stockholders a complete and accurate picture of the sales process and its fairness. Without this information, stockholders were not fully informed as to the defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process. Without all material information, Carbon Black stockholders are unable to make a fully informed decision in connection with the Proposed Transaction and face irreparable harm, warranting the injunctive relief sought herein.

51.     In addition, the Individual Defendants knew or recklessly disregarded that the Recommendation Statement omits the material information concerning the Proposed Transaction and contains the materially incomplete and misleading information discussed above.

52.     Specifically, the Individual Defendants undoubtedly reviewed the contents of the Recommendation Statement before it was filed with the SEC. Indeed, as directors of the Company, they were required to do so. The Individual Defendants thus knew or recklessly disregarded that the Recommendation Statement omits the material information referenced above and contains the incomplete and misleading information referenced above.

53.     Further, the Recommendation Statement indicates that on August 22, 2019, Morgan Stanley reviewed with the Board its financial analysis of the Merger Consideration and delivered to the Board an oral opinion, which was confirmed by delivery of a written opinion of the same date, to the effect that the Merger Consideration was fair, from a financial point of view, to Carbon Black shareholders. Accordingly, the Individual Defendants undoubtedly reviewed or were presented with the material information concerning Morgan Stanley's financial analyses which has been omitted from the Recommendation Statement, and thus knew or should have known that such information has been omitted.

54.     Plaintiff and the other members of the Class are immediately threatened by the wrongs complained of herein, and lack an adequate remedy at law. Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that the Company's shareholders will continue to suffer absent judicial intervention.

## CLAIMS FOR RELIEF

## COUNT I

**On Behalf of Plaintiff and the Class Against All Defendants for Violations of
Section 14(e) of the Exchange Act and Rule 14d-9**

55.     Plaintiff incorporates each and every allegation set forth above as if fully set forth

herein.

56.     Defendants have filed the Recommendation Statement with the SEC with the

intention of soliciting Carbon Black shareholder support for the Proposed Transaction. Each of the

Individual Defendants reviewed and authorized the dissemination of the Recommendation

Statement, which fails to provide the material information referenced above.

57.     In so doing, Defendants made materially incomplete and misleading statements

and/or omitted material information necessary to make the statements made not misleading. Each

of the Individual Defendants, by virtue of their roles as officers and/or directors of Carbon Black,

were aware of the omitted information but failed to disclose such information, in violation of

Section 14(e).

58.     Section 14(e) of the Exchange Act provides that it is unlawful "for any person to

make any untrue statement of a material fact or omit to state any material fact necessary in order

to make the statements made, in light of the circumstances under which they are made, not

misleading. . . ." 15 U.S.C. § 78n(e).

59.     Specifically, and as detailed above, the Recommendation Statement violates

Section 14(e) and Rule 14d-9 because it omits material facts concerning: (i) management's

financial projections; (ii) the value of Carbon Black shares and the financial analyses performed

by Morgan Stanley in support of its fairness opinion; and (iii) the sales process.

60.     Moreover, in the exercise of reasonable care, the Individual Defendants knew or should have known that the Recommendation Statement is materially misleading and omits material information that is necessary to render it not misleading. The Individual Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction; indeed, the Recommendation Statement states that Morgan Stanley reviewed and discussed its financial analyses with the Board and the Special Committee during various meetings including on August 22, 2019, and further states that the Board relied upon Morgan Stanley's financial analyses and fairness opinion in connection with approving the Proposed Transaction. The Individual Defendants knew or should have known that the material information identified above has been omitted from the Recommendation Statement, rendering the sections of the Recommendation Statement identified above to be materially incomplete and misleading.

61.     The misrepresentations and omissions in the Recommendation Statement are material to Plaintiff and the Class, who will be deprived of their right to make an informed tender decision if such misrepresentations and omissions are not corrected prior to the end of the tender offer. Plaintiff and the Class have no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff and the Class against the Individual Defendants for Violations of
Section 20(a) of the Exchange Act**

62.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

63.     The Individual Defendants acted as controlling persons of Carbon Black within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Carbon Black and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Recommendation Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

64.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Recommendation Statement and other statements alleged by Plaintiff to be misleading prior to the time the Recommendation Statement was filed with the SEC and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

65.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Recommendation Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of the Recommendation Statement.

66.     In addition, as the Recommendation Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Recommendation Statement purports to describe the various issues and

information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

67.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

68.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(e) and Rule 14d-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff and the Class will be irreparably harmed.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in his favor and in favor of the Class and against the Defendants jointly and severally, as follows:

A.     Declaring that this action is properly maintainable as a Class Action and certifying Plaintiff as Class Representative and his counsel as Class Counsel;

B.     Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from filing any amendment to the Recommendation Statement with the SEC unless and until Defendants agree to include the material information identified above in any such amendment;

C.     Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Recommendation Statement;

D.      In the event that the transaction is consummated prior to the entry of this Court's final judgment, rescinding it or awarding Plaintiff and the Class rescissory damages;

E.      Directing the Defendants to account to Plaintiff and the Class for all damages suffered as a result of their wrongdoing;

F.      Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

G.      Granting such other and further equitable relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury.

Dated: September 11, 2019

**RIGRODSKY & LONG, P.A.**

By:   */s/ Gina M. Serra*
      Brian D. Long (#4347)
      Gina M. Serra (#5387)
      300 Delaware Avenue, Suite 1220
      Wilmington, DE 19801
      Telephone: (302) 295-5310
      Facsimile: (302) 654-7530
      Email: bdl@rl-legal.com
      Email: gms@rl-legal.com

**OF COUNSEL:**

**ROWLEY LAW PLLC**
Shane T. Rowley
Danielle Rowland Lindahl
50 Main Street, Suite 1000
White Plains, NY 10606
Telephone: (914) 400-1920
Facsimile: (914) 301-3514

*Attorneys for Plaintiff*